UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATTHEW LITTLE,

                Plaintiff,

    v.

KITSAP TRANSIT, BILL RATHKE and JANE DOE,

                Defendants.

CASE NO. C08-5010RJB

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 19) and other motions (Dkt. 34). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Matthew Little lives in Kitsap County, and does not own a car. Dkt. 29, Ex A. Lacking a driver's license and access to a vehicle, Plaintiff is a frequent passenger of Kitsap Transit buses. *Id*. Unfortunately, Plaintiff has had frequent problems with Kitsap Transit.

This lawsuit stems from two incidents in which Plaintiff was suspended from Kitsap Transit vehicles and property. The first suspension notice was issued on April 7, 2006. Dkt. 20, Ex A. The second suspension was issued on July 20, 2006. Dkt. 20, Ex C.

**A.  First Notice of Suspension**

The primary incident that led to Plaintiff's first suspension from Kitsap Transit occurred on March 22, 2006. On that day, Plaintiff boarded the route 17 Kitsap Transit bus. Dkt. 35, at 1. Mr. and Mrs. Ipema, a couple in their eighties, were also riding the route 17 bus. Dkt. 28, at 2.

ORDER - 1

Ms. Ipema states that after boarding the bus, Plaintiff opened the window next to his seat. *Id*. at 1. Ms. Ipema further declares that a dispute concerning the open window arose between Plaintiff and her husband. *Id*. at 2. Plaintiff admits to being on the route 17 bus, but he denies that anything was said by anyone on that bus. Dkt. 35, at 1. Mr. and Mrs. Ipema later got off the route 17 bus and switched to the route 13 bus to avoid further contact with Plaintiff. Dkt. 28, at 2.

A few stops later, Plaintiff also got off the route 17 bus and transferred to the route 13 bus. Dkt. 35, at 1. Ms. Ipema declares that Plaintiff boarded the route 13 bus and said to her and her husband: "You can't get away from me. You thought I couldn't find you," or words to that effect. Dkt. 28, at 2. Ms. Ipema states that Plaintiff took a seat directly in front of her and her husband, and opened the window, causing cold air and rain to blow into the bus. *Id*. at 2. Ms. Ipema states that her husband asked Plaintiff to close the window, and that Plaintiff refused and began arguing with Mr. Ipema. *Id*. The bus driver, Alice Drake, states that she observed the commotion and asked Plaintiff over the loud speaker to close the window and change seats. Dkt. 23, at 2. Ms. Drake states that Plaintiff refused to close his window or change seats. *Id*. Plaintiff denies these allegations, and specifically denies that Ms. Drake ever used the loud speaker. Dkt. 35, at 1-2.

Ms. Drake further declares that she observed Mr. Ipema reach over Plaintiff and close Plaintiff's window, that while looking in the rear view mirror, she saw Plaintiff stand up and "put his hands" on Mr. Ipema, that she then called dispatch and ordered Plaintiff to exit the bus, and that before exiting, Plaintiff swore at her, calling her a "f - - - ing b - - ch" and "flipping her off" with his middle finger. Dkt. 28, at 2.

Plaintiff disagrees with Defendants' description of the alleged altercation. Plaintiff states that no argument occurred between himself and Mr. Ipema before Mr. Ipema attempted to close the window, that Mr. Ipema provoked the incident, that Mr. Ipema never asked Plaintiff to close the window, that Mr. Ipema stood up, entered Plaintiff's seating area, stepped on Plaintiff's boots, and reached over and closed the window while standing on Plaintiff's boots, that when Plaintiff

ORDER - 2

attempted to re-open the window, Mr. Ipema put his hands on Plaintiff's hands and prevented him from re-opening the window, that Ms. Drake then looked up, noticed the situation, and stopped the bus, that Mr. Ipema complained to Ms. Drake, and that Ms. Drake took Mr. Ipema's side and ordered Plaintiff to exit the bus. Dkt. 35, at 1-2. Plaintiff states that Ms. Drake ordered him off the bus without due process and in retaliation for complaining about his treatment. Dkt. 6, at 2.

Ms. Drake prepared an incident report describing the events of March 22, 2006. Dkt. 23, at 10. Roy Harrington, the Kitsap Transit Operations Director, learned of Plaintiff's alleged conduct of March 22nd by reviewing Kitsap Transit's incident reports. Dkt. 20, at 2. After reading Ms. Drakes' report, Mr. Harrington concluded that Plaintiff had violated Article III, Section A, subparagraphs 24 and 38 of the Kitsap Transit Rules of Conduct. Dkt. 20, at 2.

Article III, Section A prohibits certain behavior on Kitsap Transit buses. Subparagraph 24 prohibits passengers from "[d]isturbing others by engaging in loud, raucous, unruly, harmful, or harassing behavior." Dkt. 21, Ex A, at 6. Subparagraph 38 prohibits passengers from the following:

> [c]ommiting any act which tends to create or incite, or creates or incites, an immediate breach of peace, including, but not limited to (a) fighting, (b) racing, (c) obscene language and noisy or boisterous conduct tending to cause a breach of the peace, and (d) personally abusive epithets, or words or language of an offensive, disgusting or insulting nature, which epithets, words or language when addressed to the ordinary citizen are, as a matter of common knowledge, inherently likely to provoke a violent reaction of fear, anger or apprehension.

Dkt. 21, Ex A, at 7.

Mr. Harrington was also familiar with numerous incident reports, dating back to 2003, which detailed prior instances of Plaintiff's alleged misconduct on Kitsap Transit buses. Dkt. 20, at 2. From March of 2003 to December of 2005, eleven separate incidents involving Plaintiff were reported. Dkt. 20, Ex B. Many of these incident reports alleged instances of Plaintiff being intoxicated, refusing to pay his fare, and/or verbally abusing bus drivers and/or other passengers. *Id*.

On April 7, 2006, Mr. Harrington authorized Bill Rathke, a Kitsap Transit supervisor, to notify Plaintiff that he was suspended from Kitsap Transit vehicles and property for six months.

ORDER - 3

Dkt. 20, at 2. Under the terms of the suspension, Plaintiff was allowed to use the Bremerton ferry terminal (Dkt. 20, at 3) which is co-owned and co-managed by Kitsap Transit and Washington State. Dkt. 20, Ex D, at 7. Mr. Harrington states that he based this decision on the alleged conduct of Plaintiff detailed in the March 22, 2006, incident report, as well as the alleged conduct described in the 11 other incident reports involving Plaintiff. Dkt. 20, at 2.

The notice of exclusion gave only the following reason for Plaintiff's exclusion from Kitsap Transit vehicles and property: "On several previous occasions, and [on] 3/22/06 you committed acts of aggression causing a breach of the peace, including intimidation and abusive and obscene language." Dkt. 20, Ex. A. The notice of exclusion indicated that Plaintiff's alleged conduct was a violation of Article III, Section A, subparagraphs 24 and 38 of the Kitsap Transit Rules of Conduct. *Id*.

In contrast, Plaintiff alleges that his suspension resulted from a complaint he lodged with Mr. Rathke concerning the March 22, 2006 incident. Dkt. 6, p.2. Plaintiff alleges that he went to the Kitsap Transit offices and made a complaint to Mr. Rathke about the March 22, 2006 incident. *Id*. Plaintiff further asserts that Mr. Rathke disliked Plaintiff's attitude and tone in this conversation, and this was the reason that Mr. Rathke suspended Plaintiff from Kitsap Transit vehicles and property for six months. *Id*.

**B.    Second Notice of Suspension**

On July 20, 2006, Plaintiff received a second suspension notice from Kitsap Transit. Dkt. 20, Ex C. This second notice excluded Plaintiff from Kitsap Transit vehicles and property for an additional six months, until April 12, 2007. *Id*. The reason given for the second exclusion was: "On 7/18/06 you made an obscene gesture to the Kitsap Transit supervisor on duty." *Id*. Again, this notice of an additional exclusion indicated that Plaintiff's alleged conduct was a violation of Article III, Section A, subparagraphs 24 and 38 of the Kitsap Transit Rules of Conduct. *Id*.

Defendants allege that this second suspension resulted from Plaintiff's repeated harassment of Mr. Rathke, a Kitsap Transit Supervisor, at the Bremerton ferry terminal. Dkt. 19,

at 7. Specifically, Defendants allege that Plaintiff "flipped off" Mr. Rathke with his middle finger on several occasions. *Id.*

Plaintiff characterizes the events underlying his second suspension differently. Plaintiff alleges that he attempted to board the Washington ferry in Bremerton on July 18, 2006. Plaintiff contends that Mr. Rathke intervened, and attempted to forbid Plaintiff from entering the land surrounding the ferry terminal by claiming it was Kitsap Transit property. Plaintiff admits that he "complained and gestured" to Mr. Rathke, and alleges that Mr. Rathke threatened Plaintiff with another six months of exclusion from the Kitsap Transit system. Dkt. 6, at 2.

On September 8, 2006, Plaintiff and his attorney met with then Kitsap Transit Manager Roy Harrington for an appeal hearing related to Plaintiff's exclusions from Kitsap Transit. Dkt. 20, at 3. At the hearing, Plaintiff voiced his many frustrations with Kitsap Transit. Dkt. 20, Ex D. Mr. Harrington did not discuss the reasons for Plaintiff's exclusions during the hearing, nor did he provide Plaintiff with copies of the 11 previous incident reports. *Id.* Plaintiff was told that he would be provided with a copy of his file later because Mr. Harrington needed "to redact the names and things." Dkt. 20, Ex D, at 6.

On September 13, 2006, Mr. Harrington sent a letter to Plaintiff's attorney. Dkt. 20, Ex. E. Mr. Harrington enclosed a copy of the Kitsap Transit rules and "all the official reports related to Mr. Little's documented behavior on our transit system" with the letter. Mr. Harrington wrote, "The incident for which [Mr. Little] is currently excluded occurred on March 22, 2006." Mr. Harrington then repeated the allegations that on March 22, 2006, Plaintiff had a confrontation with an elderly couple, shoved an 80-year old man, swore at the bus driver, and refused to leave the bus until the driver threatened to contact the police. Mr. Harrington concluded his letter by informing Plaintiff's attorney that Plaintiff "will continue to be excluded until October 12, 2006 per the original exclusion notice." *Id.*

Plaintiff states that the actions of Kitsap Transit and its employees were taken in retaliation for Plaintiff's complaints about the policies and practices of Kitsap Transit. Dkt. 35, at 3. Plaintiff declares that since 2002, he has continually complained about increases in fares, about

bus drivers closing doors and leaving passengers behind, and about the lack of a backup system for when buses break down or cannot make their connections. *Id*. at 4. Plaintiff declares that he has made these complaints over the phone to Kitsap Transit's complaint line, and in person at Kitsap Transit's headquarters. *Id*. at 3. Plaintiff states that when he would make complaints, Kitsap Transit's bus drivers would typically retaliate against him by attempting to provoke incidents in order to establish a pretext for kicking him off the bus. *Id*. at 4. Additionally, Plaintiff declares that all of his complaints were made in an appropriate manner, did not violate Kitsap Transit rules, and did not endanger anyone. *Id*.

Plaintiff filed suit against Kitsap Transit, Bill Rathke, and Alice Drake on January 7, 2008. In his Complaint, Plaintiff asserted a claim under 42 U.S.C. Section 1983, alleging that Defendants violated his First and Fourteenth Amendment rights by excluding him from Kitsap Transit vehicles and property for exercising his First Amendment right to criticize public employees and petition Kitsap Transit for redress of his grievances. Plaintiff also brought a defamation claim under Washington law. Dkt. 6.

Defendants filed their Answer and Counterclaims on April 21, 2008. In their answer and counterclaims, Defendants assert that Plaintiff's claims are frivolous and without merit, and constitute malicious prosecution under RCW 4.24.350. Defendants also seek an order "declaring plaintiff to be a public nuisance" and permanently enjoining him from Kitsap Transit facilities and buses. Dkt. 12. Plaintiff filed his answer to Defendants' counterclaims on May 26, 2008. Dkt. 13.

On September 11, 2008, Defendants filed this motion for summary judgment and 11 supporting declarations. Dkt. 19-30. Defendants also filed a "Motion to Preclude Plaintiff from Offering Evidence in Opposition to Defendants' Motion for Summary Judgment" (Dkt. 31) on September 11, 2008, which the Court denied on October 2, 2008. Dkt. 37. On September 29, 2008, Plaintiff filed his Response to Defendants' motion for summary judgment, and two supporting declarations. Dkt. 34-36. Defendants filed their Reply on October 3, 2008. Dkt. 38.

ORDER - 6

## II. DISCUSSION

Defendants now move for summary judgment on the grounds that Plaintiff has failed to establish a prima facie case for both his 42 U.S.C. Section 1983 claim, and his state defamation claim.

### A. PLAINTIFF'S MOTION FOR CONTINUANCE

Plaintiff's response to Defendants' summary judgment motion is titled "Response to Motion for Summary Judgment; Motion to Exclude; Motion for Continuance Under FRCP 56(F)." Dkt. 34. In this document, Plaintiff requests a continuance so that he can "see if Transit employees are taught the requirements of *Houston v. Hill* before they are allowed to exercise police powers." Dkt. 34, at 5.

Federal Rule of Civil Procedure 56(f) allows the Court to deny or continue a motion for summary judgment if the defending party shows by affidavit that it is unable to properly defend against the motion. Fed. R. Civ. P. 56(f). The party seeking such a continuance must make (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists. *Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1129-1130 (9th Cir. 2004). The Court may deny the request unless the party opposing summary judgment articulates how additional discovery may preclude summary judgment and demonstrates diligence in pursuing discovery thus far. *Qualls v. Blue Cross of California, Inc.*, 22 F.3d 839, 844 (9th Cir. 1994). The burden is on the nonmoving party to establish that additional discovery would produce evidence sufficient to defeat summary judgment and that the evidence it seeks is in existence. *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001).

Here, Plaintiff has failed to submit a showing that he is unable to properly defend against Defendants' summary judgment motion. Moreover, Plaintiff has failed to specifically identify the relevant information he seeks, and his basis for believing that the information sought actually exists. Finally, Plaintiff has failed to demonstrate that he has been diligent in pursuing discovery thus far, as

illustrated by his failure to provide initial disclosures by the Court's deadline. Accordingly, Plaintiff's motion for a continuance under Fed. R. Civ. P. 56(f) should be denied.

**B.     PLAINTIFF'S "MOTION TO EXCLUDE"**

In his response to Defendants' motion to summary judgment, Plaintiff "objects to the court's consideration of all evidence submitted by the defendants that does not relate to the March 22, 2006 incident that led [sic] exclusion order, including all other incidents submitted in support of their motion." Dkt. 34, at 1. Plaintiff also argues that "a general allegation of previous incidents without further explanation opens the door for the Transit Authority to violate FRE 401's prohibition against character evidence by tacking on unsubstantiated character evidence to support their action, without giving an opportunity to respond." *Id*. at 2. Finally, Plaintiff objects to the declaration of Roy Harrington and its attachments, arguing that Mr. Harrington lacks personal knowledge of facts provided in the declaration, and requesting that the attachments to the declaration be stricken as hearsay.

**1.     "Motion to Exclude" for Lack of Due Process**

First, Plaintiff objects to the Court's consideration of all evidence submitted by Defendants that does not related to the March 22, 2006 incident. Specifically, Plaintiff objects to the inclusion of the incident reports not directly related to the March 22, 2006 incident. Plaintiff cites *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), for the proposition that, as a matter of due process, he should have been given notice in his exclusion order of the exact incidents and conduct that were being alleged against him.

Plaintiff asserts that *Loudermill* and *Board of Regents v. Roth*, 408 U.S. 564 (1972), establish that a predeprivation hearing must be held whenever a property right is denied. Plaintiff claims he has been denied the valuable property right of "access to low cost, environmentally sensitive public transportation," and that he is entitled to notice of the charges against him, an explanation of the evidence against him, and an opportunity to present his side of the story.

Plaintiff's due process argument is unpersuasive. Under *Loudermill*, no predeprivation hearing is required absent the deprivation of a constitutionally protected property interest. As

ORDER - 8

explained below, Plaintiff has no constitutionally protected property interest in "access to low cost, environmentally sensitive public transportation." Dkt. 34, at 2. Absent the deprivation of a constitutionally protected property interest, there is no due process right to a predeprivation hearing or notice of exactly what incidents and conduct are being alleged. Plaintiff's "motion to exclude" for lack of due process is denied.

### 2. "Motion to Exclude" for "Violation of FRE 401"

In objecting to the Court's consideration of evidence not relating to the March 22, 2006 incident, Plaintiff states, "A general allegation of previous incidents without further explanation opens the door for the Transit Authority to violate FRE 401's prohibition against character evidence by tacking on unsubstantiated character evidence to support their action, without giving an opportunity to respond." Dkt. 34, at 2. Fed. R. Evid. 401 addresses the relevancy of evidence, not the admissibility of character evidence. Plaintiff may have intended to cite to Fed. R. Evid. 404. Nonetheless, Plaintiff's general observation on the inadmissibility of character evidence is not sufficient to support the exclusion of evidence at the summary judgment stage. Therefore, Plaintiff's "motion to exclude" for "violation of FRE 401" is denied.

### 3. "Motion to Exclude" for Lack of Personal Knowledge

Plaintiff also objects to the declaration of Roy Harrington, arguing that Mr. Harrington "claims to have personal knowledge of all facts listed in the declaration." Dkt. 34, at 2. Plaintiff further asserts, "As an administrator, [Mr. Harrington] would not have personal knowledge of any of the incidents." Dkt. 34, at 2.

Fed. R. Evid. 602 provides, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Here, Mr. Harrington may lack personal knowledge of the incidents described in the various incident reports, but he does have personal knowledge of the existence and language of the numerous incident reports alleging instances of misconduct by the Plaintiff. This level of personal knowledge is sufficient for Mr. Harrington to offer testimony as to the actions he took as an administrator and his motivation for taking those actions. However, to the extent that the declaration

is offered to prove the truth of the matters asserted in the incident reports, Plaintiff's objection is well taken, and the Court will not consider whether the incidents reported occurred as reported. Accordingly, Plaintiff's "motion to exclude" for lack of personal knowledge is granted in part and denied in part.

### 4. "Motion to Exclude" Hearsay Evidence

Finally, Plaintiff objects to the declaration of Mr. Harrington and its attachments on the grounds that Mr. Harrington has submitted a "huge amount of testimony that consists of unsubstantiated hearsay." Dkt. 34, at 2. Fed. R. Evid. 801(c) defines hearsay as "a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c).

Mr. Harrington's statements are not offered to prove the truth of the matter asserted. Mr. Harrington's declaration and the exhibits attached thereto are offered to show Mr. Harrington's state of mind in making decisions affecting Plaintiff. Moreover, the exhibits attached to Mr. Harrington's declaration appear to be records of regularly conducted business activity, which would fall under the Fed. R. Evid. 803(6) hearsay exception. Therefore, Plaintiff's "motion to exclude" Mr. Harrington's declaration and the exhibits thereto is denied.

## C. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient

evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**D.     PLAINTIFF'S FIRST CAUSE OF ACTION**

Plaintiff's first cause of action alleges that Defendants violated 42 U.S.C. § 1983 and Plaintiff's First and Fourteenth Amendments rights by banning Plaintiff from the use of public transit for criticizing public employees and petitioning the Kitsap Transit administration for redress of grievances. Dkt. 6, at 3.

**1.     Section 1983 Claim for Denial of Constitutional Right to Free Speech**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under 42 U.S.C. Section 1983, plaintiffs must demonstrate that (1) the conduct complained of was committed by a person acting under color of law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986). Section 1983 is the appropriate remedy only if both elements are satisfied. *Haygood v. Younger*, 769 F.2d 1350, 1354

(9th Cir. 1985). As a general rule, public employees act under state law if they are acting in their official capacity or while exercising responsibilities conferred by state law. *West v. Atkins*, 487 U.S. 42, 50 (1988).

In addition, plaintiffs must allege facts demonstrating that individual defendants caused, or personally participated in causing, the alleged harm. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981). A defendant cannot be held liable under 42 U.S.C. Section 1983 solely on the basis of supervisory responsibility or position. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).

Deliberate retaliation against the exercise of an individual's right to access the courts or freedom of speech is actionable under Section 1983. *Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out."); *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989). Such claims require evidence that (1) Defendants possessed an impermissible motive to interfere with Plaintiff's First Amendment rights, (2) that the offending conduct would chill a plaintiff of ordinary firmness from engaging in future First Amendment activities, and (3) that Defendants would not have engaged in the conduct but for the retaliatory motive. *See Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999); *Hartman*, 547 U.S. at 260.

If a plaintiff succeeds in establishing a prima facie case of retaliation, the burden shifts to the defendant to demonstrate that the action complained of would have been taken even without the exercise of First Amendment rights. *See Hartman*, 547 U.S. at 260 ("action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway"). The intent to inhibit speech can be demonstrated through direct or circumstantial evidence. *Mendocino*, 192 F.3d at 1301-02.

Here, Plaintiff has stated a prima facie case under 42 U.S.C. Section 1983. First, Plaintiff has raised an issue as to whether the conduct complained of was committed by individuals acting under color of law. Defendants Alice Drake and Bill Rathke are both public employees. As a general rule,

public employees act under color of law when they act in their official capacity. *West*, 487 U.S. at 50. Here, it appears that Ms. Drake was acting in her official capacity when she ordered Plaintiff to exit the bus on March 22, 2006. Plaintiff has also raised an issue as to whether Ms. Drake was acting in her official capacity when she authored incident reports alleging various forms of misconduct by Plaintiff. Mr. Rathke was also apparently acting in his official capacity as a Kitsap Transit Supervisor in his interactions with Plaintiff. Viewed in a light most favorable to the Plaintiff, the alleged conduct of Defendants would have deprived Plaintiff of his First Amendment right to voice his criticisms of public employees and petition Kitsap Transit for redress of his grievances.

Furthermore, the facts alleged by Plaintiff are sufficient to establish a prima facie case of retaliation. Plaintiff's declaration describes Defendants' impermissible retaliatory motive to interfere with his First Amendment rights to lodge complaints against Defendants. Dkt. 35, at 3-4. There is also a genuine issue of material fact as to whether the act of being repeatedly excluded from Kitsap Transit vehicles and property constitutes conduct that would chill a plaintiff of ordinary firmness from continuing to criticize Kitsap Transit. Finally, Plaintiff alleges that Defendants had no other reason than a retaliatory motive to exclude him from Kitsap Transit vehicles and property.

Here, nearly all of the material facts underlying Plaintiff's claim are in dispute. First, there is a factual dispute as to what happened on March 22, 2006. Plaintiff declares that Mr. Ipema was the aggressor who provoked the incident. In contrast, Defendants argue that Plaintiff provoked the incident.

Next, there is a factual dispute as to Defendants' motivation for excluding Plaintiff from Kitsap Transit vehicles and property. Plaintiff declares that all actions taken against him by Defendants were in retaliation for Plaintiff's continuous complaints about the policy and conduct of Kitsap Transit and its employees. In contrast, Defendants argue that all the incident reports involving Plaintiff are accurate, and that Defendants' responses were reasonable. There are further factual disputes between the parties concerning the language that Plaintiff used, the circumstances under which Plaintiff expressed his views, and the levels of participation of the various Defendants.

At the summary judgment stage, factual issues of controversy must be resolved in favor of the non-moving party. Given this standard, Plaintiff has succeeded in raising genuine issues of the material facts underlying this claim. Accordingly, Defendants motion for summary judgment in regard to Plaintiff's Section 1983 claim for violation of the First Amendment should be denied.

### 2. Section 1983 Due Process Claim

Plaintiff also appears to assert a Section 1983 procedural due process claim. In his amended complaint, Plaintiff alleges that Defendants violated the Fourteenth Amendment "by banning Plaintiff from the use of public transit for exercising his First amendment right to criticize public employees and petitioning the public transit administration for redress of his grievances." Dkt. 6, at 3. However, Plaintiff provided no facts in his amended complaint to explain his due process claim under the Fourteenth Amendment.

Plaintiff expanded upon his due process claim in his response to Defendant's motion for summary judgment. First, Plaintiff argues that, "as a matter of due process, he should have been given notice in his exclusion order of exactly what incidents and conduct were being alleged." Dkt. 34, at 1. Plaintiff also argues that his due process rights were violated when Kitsap Transit denied Plaintiff "a valuable property right" to "low cost, environmentally sensitive public transportation" without providing Plaintiff a predeprivation hearing. Dkt. 34, at 2.

Plaintiff's due process claim is deficient for a number of reasons. First, as Defendants correctly point out, this claim was improperly pled. Fed. R. Civ. P. 8(a) only requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, Plaintiff's amended complaint failed to meet this minimum standard in regard to Plaintiff's due process claim. The only notice of a due process claim that Plaintiff provided Defendants in his amended complaint was a single reference to the Fourteenth Amendment. Dkt. 6, at 3. Plaintiff's complaint failed to provide a plain statement of his due process claim showing that he is entitled to relief.

Additionally, Plaintiff fails to make a prima facie procedural due process claim. A procedural due process claim has two distinct elements: "(1) a deprivation of a constitutionally protected liberty

ORDER - 14

or property interest, and (2) a denial of adequate procedural protections." *Hufford v. McEnaney*, 249 F.3d 1142, 1150, (9th Cir. 2001). Here, Plaintiff has failed to show that he has a constitutionally protected property interest in "access to low cost, environmentally sensitive public tranportation." Dkt. 34, at 2. The Court's research also fails to show any such constitutionally protected property interest.

Plaintiff's due process claim is improperly pled and substantively deficient. Accordingly, Plaintiff's Section 1983 procedural due process claim should be dismissed.

## E. PLAINTIFF'S SECOND CAUSE OF ACTION

Plaintiff's second cause of action is a state claim of defamation. Due to the competing interests in freedom of speech and protection of an individual's reputation, "summary judgment plays a particularly important role in defamation cases." *Mohr v. Grant*, 153 Wn.2d 812, 821 (2005). To survive summary judgment in this case, Plaintiff must show a genuine issue of material fact as to each of the following elements: (1) falsity of the communication; (2) lack of privilege; (3) fault; and (4) damages. *See id.* at 822. The falsity prong is satisfied with evidence that a statement is provably false or leaves a false impression. *Id.* at 825. In this case, Plaintiff appears to allege three bases for his defamation claim. As explained in more detail below, the Defendants are entitled to summary judgment on Plaintiff's defamation claim.

### 1. Ms. Drake's Oral Statements on March 22, 2006

First, Plaintiff contends that Ms. Drake made defamatory statements when she ordered him to exit the bus on March 22, 2006. In his response to Defendants' motion for summary judgment, Plaintiff alleges that Kitsap Transit driver Alice Drake "[made] a big scene and [tried] to accuse the plaintiff publicly of assaulting an elderly man." Dkt. 34, at 4. In his declaration, Plaintiff offers only the following explanation of this aspect of his defamation claim:

> The elderly man then went up and complained to the bus driver Alice Drake, who took his side and ordered me off the bus. She made a big scene about it, trying to make it appear to other passengers that were present on the bus besides the Ipemas, that I was to blame. I complained that I did nothing wrong.

Dkt. 35, at 2. Plaintiff fails to further elaborate on these vague allegations of defamatory statements made by Ms. Drake.

ORDER - 15

While Plaintiff clearly disputes Ms. Drake's *conduct* in ordering him to exit the bus, and whether she had a proper basis for doing so, Plaintiff fails to offer any *statements* made by Ms. Drake. Vague allegations about Ms. Drake's conduct do not assist the Court in determining whether Ms. Drake made any false communications. Because Plaintiff fails to cite any false statement made by Ms. Drake, Plaintiff's defamation claim as to Ms. Drake's oral statements of March 22, 2006, should be dismissed.

### 2. Ms. Drake's Incident Report

Second, Plaintiff apparently contends that Ms. Drake's incident report is defamatory. In his deposition, Plaintiff described the facts underlying his defamation claim as follows:

> Q. Okay.
> There's also an allegation in here [the complaint] that you have been defamed, that you have had someone make false statements about you; who are you talking about?
> A. Alice Drake and Bill Radke [sic] who creatively wrote up the original report that I got kicked off the bus and walked home in the rain that says, what are you doing attacking an elderly man on our bus. I have many drivers, some still think that I did that. Alice Drake alleged that I attacked an elderly man on the bus.
> Q. So that the defamatory statement that you are talking about is something that was written?
> A. I don't know if it was written or what. Alice Drake alleged I attacked an elderly man on the bus and that - if that happened why wasn't I arrested? It never happened, that's why, so you need to retract that. So in that case, yes, I am very defamed. Many bus drivers still to this day believe I attacked an elderly man on the bus.

Dkt. 29, Ex. A at 7; *see also* Dkt. 23, Ex. C at 10 (incident report).

Ms. Drake contends that her incident report falls within the common interest privilege to defamation claims. *See Pate v. Tyee Motor Inn, Inc.*, 77 Wn.2d 819, 820-21 (1970) ("A privileged communication involves the occasion where an otherwise slanderous statement is shared with a third person who has a common interest in the subject and is reasonably entitled to know the information."). Whether a qualified privilege applies is a matter of law for courts to determine. *Moe v. Wise*, 97 Wn. App. 950, 957 (1999). Most situations in which the common interest privilege applies involve persons from the same organization or enterprise. *Id*. at 958-59. The speaker and the third party need not be allies; rather, the speaker and the third party must both have an interest in the subject matter of the defamatory statement. *Id*. at 959, 989.

ORDER - 16

Here, it is apparently undisputed that Ms. Drake's allegedly defamatory incident report was shared with Kitsap Transit. The incident report concerns Ms. Drake's employment, and as Ms. Drake's employer, Kitsap Transit had a common interest in the information and was reasonably entitled to the incident report. Plaintiff does not seriously dispute whether Ms. Drake's incident falls within the common interest privilege. *See* Dkt. 34 at 4 ("Ms. Drake may make a case for privilege with a properly maintained incident report.").

The incident report therefore falls within the common interest privilege, and the burden shifts to Plaintiff to show abuse of the privilege. *See Alpine Industries Computers, Inc. v. Cowles Pub. Co.*, 114 Wn. App. 371, 382 (2002). A qualified privileged, by definition, is not absolute. Whether the speaker has abused a qualified privilege such that the privilege is lost is ordinarily a question of fact for the jury unless the facts support only one reasonably conclusion. *Moe*, 97 Wn. App. at 962. Defamation plaintiffs can demonstrate that a qualified privilege has been abused in one of five ways: (1) the speaker knew the statement to be false or acted in reckless disregard as to its falsity, (2) the speaker did not make the statement for the purpose of protecting the common interest, (3) the speaker knowingly published the matter to a person who is not covered by the privilege, (4) the speaker did not reasonably believe the subject matter was necessary to serve the common interest, or (5) the speaker published both privileged and unprivileged statements. *Id*. at 963, 989. Evidence of abuse of the privilege must be clear and convincing. *Id*.

Plaintiff appears to allege that Ms. Drake abused the common interest privilege by knowingly making false statements in her incident report, or by making statements in the incident report with reckless disregard as to the statements' falsity. There is no doubt that an incident occurred on the bus on March 22, 2006, or that Plaintiff disagrees with some of the details in Ms. Drake's report. The most that can be said of the report, however, is that it was Ms. Drake's recollection of the incident. Plaintiff makes no showing that Ms. Drake knew her report to be false, or that she acted in reckless disregard as to its falsity. Her report was not defamatory, and, because Plaintiff has failed to show an abuse of the privilege, the common interest privilege applies to Ms. Drake's incident

1 report. Accordingly, Defendants' summary judgment motion as to Plaintiff's defamation claim, as
2 it relates to Ms. Drake's incident report, should be granted.

### 3. Kitsap Transit Leaflet

Third, Plaintiff bases his defamation claim on a leaflet created by Kitsap Transit. In his amended complaint, Plaintiff makes a "provisional allegation" that "In the process of suspending the plaintiff, Kitsap Transit caused to be published defamatory information to the public which injured his reputation in the community." Dkt. 6, at 2. Plaintiff also expressed his intent to determine the exact nature of how the defamatory information was published during the course of discovery. *Id*.

Plaintiff now argues that he "should be allowed to conduct discovery about a defamatory leaflet created by the authority." Dkt. 34, at 4. Presumably, the "defamatory leaflet" that Plaintiff refers to is Exhibit A of the declaration of Plaintiff's attorney, John Scannell. This exhibit is a one-page flyer with Plaintiff's photograph on it. The top and bottom of the flyer are prominently labeled "Not to be displayed in public viewing." Under the photograph of Plaintiff are the words: "Matthew Little, excluded until 5/22/09 for violation of article III, Section A, subparagraphs 24, 38 & 48 of KT Rules of Conduct." Below these words is a short paragraph stating that Plaintiff has been issued a "No Trespassing Order," and directing readers to contact dispatch if Plaintiff is seen violating the "No Trespass Order."

Plaintiff has not created a genuine issue of material fact as to the element of the falsity of the leaflet's alleged communications. Plaintiff offers the leaflet as evidence, but fails to explain which, if any, of the statements contained in the leaflet are false. On the surface, the statements made in the leaflet appear to be factual.

When a motion for summary judgment is made, an opposing party may not rely merely on allegations in its own pleadings; rather, its response must set out specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e)(2). Here, Plaintiff only offers allegations in his unsworn pleadings that false communications were made. Plaintiff fails to set out specific facts showing a genuine issue as to the falsity of any of the leaflet's communications. Because Plaintiff has failed to

raise a genuine issue of material fact as to the falsity of the leaflet's communications, Defendants' are entitled to summary judgment in this respect.

### III. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment (Dkt. 19) is **GRANTED IN PART AND DENIED IN PART**, as follows:

(1) With respect to Plaintiff's Section 1983 Claim for Denial of the Constitutional Right to Free Speech, Defendants' Motion for Summary Judgment is **DENIED**;

(2) With respect to Plaintiff's Section 1983 Claim for Violation of Plaintiff's Procedural Due Process Rights, Defendants' Motion for Summary Judgment is **GRANTED**;

(3) With respect to Plaintiff's state claim of Defamation, Defendants' Motion for Summary Judgment is **GRANTED**;

(4) Plaintiff's "Motion to Exclude" (Dkt. 34) is **DENIED**; and

(5) Plaintiff's Motion for Continuance Under FRCP 56(F) is **DENIED**.

DATED this 17th day of October, 2008.

*/s/ Robert J. Bryan*
ROBERT J. BRYAN
United States District Judge