UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATTHEW LITTLE,

          Plaintiff,

   v.

KITSAP TRANSIT, BILL RATHKE, and JANE DOE,

          Defendants.

CASE NO. C08-5010RJB

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON RECONSIDERATION

This matter comes before the Court on Defendants' Motion for Reconsideration (Dkt. 40). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file herein.

**I. PROCEDURAL BACKGROUND**

Plaintiff filed suit against Kitsap Transit, Bill Rathke, and Alice Drake on January 7, 2008. In his Complaint, Plaintiff asserted a claim under 42 U.S.C. § 1983, alleging that Defendants violated his First and Fourteenth Amendment rights by excluding him from Kitsap Transit vehicles and property for exercising his First Amendment right to criticize public employees and petition Kitsap Transit for redress of his grievances. Plaintiff also brought a defamation claim under Washington law. Dkt. 6.

Defendants filed their Answer and Counterclaims on April 21, 2008. In their answer and counterclaims, Defendants assert that Plaintiff's claims are frivolous and without merit, and

ORDER - 1

constitute malicious prosecution under RCW 4.24.350. Defendants further contend that Plaintiff's frivolous claims entitle each Defendant to an award of reasonable attorneys' fees and expenses under 42 U.S.C. § 1988(b). Defendants also seek an order "declaring plaintiff to be a public nuisance" and permanently enjoining him from Kitsap Transit facilities and buses. Dkt. 12. Plaintiff filed his answer to Defendants' counterclaims on May 26, 2008. Dkt. 13.

On September 11, 2008, Defendants filed a motion for summary judgment and 11 supporting declarations. Dkt. 19-30. Defendants also filed a "Motion to Preclude Plaintiff from Offering Evidence in Opposition to Defendants' Motion for Summary Judgment" (Dkt. 31) on September 11, 2008, which the Court denied on October 2, 2008. Dkt. 37. On September 29, 2008, Plaintiff filed his Response to Defendants' motion for summary judgment, and two supporting declarations. Dkt. 34-36. Defendants filed their Reply on October 3, 2008. Dkt. 38.

On October 17, 2008, the Court issues an order granting in part and denying in part Defendants' motion for summary judgment. In that order, the Court dismissed Plaintiff's state claim of defamation, but determined that Plaintiff's claim for denial of the constitutional right to free speech under 42 U.S.C. § 1983 could go forward. Dkt. 39.

On October 24, 2008, Defendants filed the Motion for Reconsideration presently before the Court. Dkt. 40. In that motion, Defendants requested that the Court reconsider the denial of Defendants' motion to dismiss Plaintiff's First Amendment claim against Alice Drake and Bill Rathke, arguing that these two Defendants are entitled to qualified immunity. The Court overlooked the qualified immunity issue in its October 17, 2008, order (Dkt. 39). Defendants also requested that the Court reconsider the denial of Defendants' motion to dismiss Plaintiff's First Amendment claim against Kitsap Transit, arguing that there is no evidence that Kitsap Transit promulgated unconstitutional policies or customs. Dkt. 40.

On October 28, 2008, the Court issued an order noting Defendants' motion for reconsideration for consideration on the Court's calendar for November 14, 2008. The Court, in its order, indicated that Plaintiff had the opportunity to file a response to Defendants' motion for

ORDER - 2

reconsideration by November 10, 2008, and that Defendants could file a reply by November 13, 2008.

Plaintiff did not respond to Defendants' motion for reconsideration. On November 13, 2008, Defendants filed a reply in support of their motion for reconsideration. Dkt. 42. The Court should now reconsider its October 17, 2008, order (Dkt. 39) to address qualified immunity and Kitsap Transit liability.

## II. FACTUAL BACKGROUND

The factual background presented below is taken from the Court's order granting in part and denying in part Defendants' motion for summary judgment (Dkt 39).

**A. Introduction**

Plaintiff Matthew Little lives in Kitsap County, and does not own a car. Dkt. 29, Ex A. Lacking a driver's license and access to a vehicle, Plaintiff is a frequent passenger of Kitsap Transit buses. *Id*. Unfortunately, Plaintiff has had frequent problems with Kitsap Transit.

This lawsuit stems from two incidents in which Plaintiff was suspended from Kitsap Transit vehicles and property. The first suspension notice was issued on April 7, 2006. Dkt. 20, Ex A. The second suspension was issued on July 20, 2006. Dkt. 20, Ex C.

**B. First Notice of Suspension**

The primary incident that led to Plaintiff's first suspension from Kitsap Transit occurred on March 22, 2006. On that day, Plaintiff boarded the route 17 Kitsap Transit bus. Dkt. 35, at 1. Mr. and Mrs. Ipema, a couple in their eighties, were also riding the route 17 bus. Dkt. 28, at 2. Ms. Ipema states that after boarding the bus, Plaintiff opened the window next to his seat. *Id*. at 1. Ms. Ipema further declares that a dispute concerning the open window arose between Plaintiff and her husband. *Id*. at 2. Plaintiff admits to being on the route 17 bus, but he denies that anything was said by anyone on that bus. Dkt. 35, at 1. Mr. and Mrs. Ipema later got off the route 17 bus and switched to the route 13 bus to avoid further contact with Plaintiff. Dkt. 28, at 2.

1  A few stops later, Plaintiff also got off the route 17 bus and transferred to the route 13
2  bus. Dkt. 35, at 1. Ms. Ipema declares that Plaintiff boarded the route 13 bus and said to her and
3  her husband: "You can't get away from me. You thought I couldn't find you," or words to that
4  effect. Dkt. 28, at 2. Ms. Ipema states that Plaintiff took a seat directly in front of her and her
5  husband, and opened the window, causing cold air and rain to blow into the bus. *Id.* at 2. Ms.
6  Ipema states that her husband asked Plaintiff to close the window, and that Plaintiff refused and
7  began arguing with Mr. Ipema. *Id.* The bus driver, Alice Drake, states that she observed the
8  commotion and asked Plaintiff over the loud speaker to close the window and change seats. Dkt.
9  23, at 2. Ms. Drake states that Plaintiff refused to close his window or change seats. *Id.* Plaintiff
10 denies these allegations, and specifically denies that Ms. Drake ever used the loud speaker. Dkt.
11 35, at 1-2.

12 Ms. Drake further declares that she observed Mr. Ipema reach over Plaintiff and close
13 Plaintiff's window, that while looking in the rear view mirror, she saw Plaintiff stand up and "put
14 his hands" on Mr. Ipema, that she then called dispatch and ordered Plaintiff to exit the bus, and
15 that before exiting, Plaintiff swore at her, calling her a "f - - - ing b - - ch" and "flipping her off"
16 with his middle finger. Dkt. 28, at 2.

17 Plaintiff disagrees with Defendants' description of the alleged altercation. Plaintiff states
18 that no argument occurred between himself and Mr. Ipema before Mr. Ipema attempted to close
19 the window, that Mr. Ipema provoked the incident, that Mr. Ipema never asked Plaintiff to close
20 the window, that Mr. Ipema stood up, entered Plaintiff's seating area, stepped on Plaintiff's boots,
21 and reached over and closed the window while standing on Plaintiff's boots, that when Plaintiff
22 attempted to re-open the window, Mr. Ipema put his hands on Plaintiff's hands and prevented him
23 from re-opening the window, that Ms. Drake then looked up, noticed the situation, and stopped
24 the bus, that Mr. Ipema complained to Ms. Drake, and that Ms. Drake took Mr. Ipema's side and
25 ordered Plaintiff to exit the bus. Dkt. 35, at 1-2. Plaintiff states that Ms. Drake ordered him off
26 the bus without due process and in retaliation for complaining about his treatment. Dkt. 6, at 2.

27
28

Ms. Drake prepared an incident report describing the events of March 22, 2006. Dkt. 23, at 10. Roy Harrington, the Kitsap Transit Operations Director, learned of Plaintiff's alleged conduct of March 22nd by reviewing Kitsap Transit's incident reports. Dkt. 20, at 2. After reading Ms. Drakes' report, Mr. Harrington concluded that Plaintiff had violated Article III, Section A, subparagraphs 24 and 38 of the Kitsap Transit Rules of Conduct. Dkt. 20, at 2.

Article III, Section A prohibits certain behavior on Kitsap Transit buses. Subparagraph 24 prohibits passengers from "[d]isturbing others by engaging in loud, raucous, unruly, harmful, or harassing behavior." Dkt. 21, Ex A, at 6. Subparagraph 38 prohibits passengers from the following:

> [c]ommiting any act which tends to create or incite, or creates or incites, an immediate breach of peace, including, but not limited to (a) fighting, (b) racing, (c) obscene language and noisy or boisterous conduct tending to cause a breach of the peace, and (d) personally abusive epithets, or words or language of an offensive, disgusting or insulting nature, which epithets, words or language when addressed to the ordinary citizen are, as a matter of common knowledge, inherently likely to provoke a violent reaction of fear, anger or apprehension.

Dkt. 21, Ex A, at 7.

Mr. Harrington was also familiar with numerous incident reports, dating back to 2003, which detailed prior instances of Plaintiff's alleged misconduct on Kitsap Transit buses. Dkt. 20, at 2. From March of 2003 to December of 2005, eleven separate incidents involving Plaintiff were reported. Dkt. 20, Ex B. Many of these incident reports alleged instances of Plaintiff being intoxicated, refusing to pay his fare, and/or verbally abusing bus drivers and/or other passengers. *Id*.

On April 7, 2006, Mr. Harrington authorized Bill Rathke, a Kitsap Transit supervisor, to notify Plaintiff that he was suspended from Kitsap Transit vehicles and property for six months. Dkt. 20, at 2. Under the terms of the suspension, Plaintiff was allowed to use the Bremerton ferry terminal (Dkt. 20, at 3) which is co-owned and co-managed by Kitsap Transit and Washington State. Dkt. 20, Ex D, at 7. Mr. Harrington states that he based this decision on the alleged conduct of Plaintiff detailed in the March 22, 2006, incident report, as well as the alleged conduct described in the 11 other incident reports involving Plaintiff. Dkt. 20, at 2.

ORDER - 5

1        The notice of exclusion gave only the following reason for Plaintiff's exclusion from Kitsap Transit vehicles and property: "On several previous occasions, and [on] 3/22/06 you committed acts of aggression causing a breach of the peace, including intimidation and abusive and obscene language." Dkt. 20, Ex. A. The notice of exclusion indicated that Plaintiff's alleged conduct was a violation of Article III, Section A, subparagraphs 24 and 38 of the Kitsap Transit Rules of Conduct. *Id*.

       In contrast, Plaintiff alleges that his suspension resulted from a complaint he lodged with Mr. Rathke concerning the March 22, 2006 incident. Dkt. 6, p.2. Plaintiff alleges that he went to the Kitsap Transit offices and made a complaint to Mr. Rathke about the March 22, 2006 incident. *Id*. Plaintiff further asserts that Mr. Rathke disliked Plaintiff's attitude and tone in this conversation, and this was the reason that Mr. Rathke suspended Plaintiff from Kitsap Transit vehicles and property for six months. *Id*.

**C.**      **Second Notice of Suspension**

       On July 20, 2006, Plaintiff received a second suspension notice from Kitsap Transit. Dkt. 20, Ex C. This second notice excluded Plaintiff from Kitsap Transit vehicles and property for an additional six months, until April 12, 2007. *Id*. The reason given for the second exclusion was: "On 7/18/06 you made an obscene gesture to the Kitsap Transit supervisor on duty." *Id*. Again, this notice of an additional exclusion indicated that Plaintiff's alleged conduct was a violation of Article III, Section A, subparagraphs 24 and 38 of the Kitsap Transit Rules of Conduct. *Id*.

       Defendants allege that this second suspension resulted from Plaintiff's repeated harassment of Mr. Rathke, a Kitsap Transit Supervisor, at the Bremerton ferry terminal. Dkt. 19, at 7. Specifically, Defendants allege that Plaintiff "flipped off" Mr. Rathke with his middle finger on several occasions. *Id*.

       Plaintiff characterizes the events underlying his second suspension differently. Plaintiff alleges that he attempted to board the Washington ferry in Bremerton on July 18, 2006. Plaintiff contends that Mr. Rathke intervened, and attempted to forbid Plaintiff from entering the land surrounding the ferry terminal by claiming it was Kitsap Transit property. Plaintiff admits that he

"complained and gestured" to Mr. Rathke, and alleges that Mr. Rathke threatened Plaintiff with another six months of exclusion from the Kitsap Transit system. Dkt. 6, at 2.

On September 8, 2006, Plaintiff and his attorney met with then Kitsap Transit Manager Roy Harrington for an appeal hearing related to Plaintiff's exclusions from Kitsap Transit. Dkt. 20, at 3. At the hearing, Plaintiff voiced his many frustrations with Kitsap Transit. Dkt. 20, Ex D. Mr. Harrington did not discuss the reasons for Plaintiff's exclusions during the hearing, nor did he provide Plaintiff with copies of the 11 previous incident reports. *Id*. Plaintiff was told that he would be provided with a copy of his file later because Mr. Harrington needed "to redact the names and things." Dkt. 20, Ex D, at 6.

On September 13, 2006, Mr. Harrington sent a letter to Plaintiff's attorney. Dkt. 20, Ex. E. Mr. Harrington enclosed a copy of the Kitsap Transit rules and "all the official reports related to Mr. Little's documented behavior on our transit system" with the letter. Mr. Harrington wrote, "The incident for which [Mr. Little] is currently excluded occurred on March 22, 2006." Mr. Harrington then repeated the allegations that on March 22, 2006, Plaintiff had a confrontation with an elderly couple, shoved an 80-year old man, swore at the bus driver, and refused to leave the bus until the driver threatened to contact the police. Mr. Harrington concluded his letter by informing Plaintiff's attorney that Plaintiff "will continue to be excluded until October 12, 2006 per the original exclusion notice." *Id*.

Plaintiff states that the actions of Kitsap Transit and its employees were taken in retaliation for Plaintiff's complaints about the policies and practices of Kitsap Transit. Dkt. 35, at 3. Plaintiff declares that since 2002, he has continually complained about increases in fares, about bus drivers closing doors and leaving passengers behind, and about the lack of a backup system for when buses break down or cannot make their connections. *Id*. at 4. Plaintiff declares that he has made these complaints over the phone to Kitsap Transit's complaint line, and in person at Kitsap Transit's headquarters. *Id*. at 3. Plaintiff states that when he would make complaints, Kitsap Transit's bus drivers would typically retaliate against him by attempting to provoke incidents in order to establish a pretext for kicking him off the bus. *Id*. at 4. Additionally,

ORDER - 7

Plaintiff declares that all of his complaints were made in an appropriate manner, did not violate Kitsap Transit rules, and did not endanger anyone. *Id.*

## III. DISCUSSION

Defendants request that the Court reconsider its denial of Defendants' motion for summary judgment on Plaintiff's First Amendment claim against Alice Drake and Bill Rathke. Defendants maintain that Ms. Drake and Mr. Rathke are entitled to qualified immunity, and that Plaintiff's claim against these two Defendants should be dismissed. Defendants also request that the Court reconsider its denial of Defendants' motion for summary judgment on Plaintiff's First Amendment claim against Kitsap Transit. Defendants argue that there is no evidence that Kitsap Transit promulgated unconstitutional policies or customs, and that accordingly, Plaintiff's claim against Kitsap Transit should be dismissed.

**A. Plaintiff's First Amendment Claim Against Alice Drake and Bill Rathke**

Defendants, in their motion for reconsideration, argue that Plaintiff's First Amendment Claim against Alice Drake and Bill Rathke should be dismissed because Ms. Drake and Mr. Rathke are entitled to qualified immunity.

Local Rule CR 7(b)(2) provides, "If a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." Here, Plaintiff has failed to file papers in opposition to Defendants' motion for reconsideration. Accordingly, the Court may consider such failure as an admission by Plaintiff that Defendants' motion has merit.

Notwithstanding Plaintiff's failure to respond, the merits of Defendants' argument that Ms. Drake and Mr. Rathke are entitled to qualified immunity warrant consideration. Government officials who are sued in their individual capacities have qualified immunity from suit absent evidence of incompetence or knowing violation of the law. *See Anderson v. Creighton*, 483 U.S. 635, 638 (1987). This rule shields government officials from suit in order to avoid unduly hindering officials' performance of their governmental duties. *Id.* Qualified immunity is not merely a defense to liability; it is an entitlement to immunity from suit in the first place. *See*

1 *Devereaux v. Perez*, 218 F.3d 1045, 1052 (9th Cir. 2000), *reh'g en banc*, *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001).

The defense of qualified immunity has three steps. First, there must be a violation of a constitutional right, as explained in *Saucier v. Katz*, 533 U.S. 194, 201 (2001). At this stage, the facts are viewed in the light most favorable to the injured party. *Id*. Absent such a violation, there is no need to pursue the remaining qualified immunity analysis. *Id*.

Second, the right must be so clearly established that a reasonable officer would be on notice of its existence and parameters. *Id.* at 199; *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). This burden rests with the plaintiff. *Romero*, 931 F.2d at 627. The plaintiff may establish that the conduct at issue was previously held unlawful or that the unlawfulness is apparent. *See Anderson*, 483 U.S. at 640.

Third, the officer must demonstrate that a reasonable officer could have believed that the conduct was lawful. *See Romero*, 931 F.2d at 627. Qualified immunity is "designed to spare a defendant not only of unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit." *Devereaux*, 218 F.3d at 1052.

**1) Qualified Immunity of Ms. Drake**

Here, Defendants argue that Ms. Drake is entitled to qualified immunity because a reasonable person in her position would not have believed that reporting Plaintiff's inappropriate behavior amounted to a violation of Plaintiff's First Amendment rights. Defendants also note that Ms. Drake had no input in Mr. Harrington's decision to temporarily exclude Plaintiff from Kitsap Transit vehicles and property. Additionally, Defendants contend that the balancing test under the First Amendment does not establish a clearly protected right in the circumstances of this case. Dkt. 19, at 19.

Plaintiff, in his response to Defendants' motion for summary judgment, appears to argue that Ms. Drake is not entitled to qualified immunity because *Houston v. Hill*, 482 U.S. 451 (1987), was clearly established law at the time Plaintiff was excluded from Kitsap Transit vehicles and property. Plaintiff also argues, "the evidence now before the court demonstrates that both

Radke [sic] and Drake acted with retaliation and revenge for the challenge directed at him by the plaintiff which was mild under the standards given in *Houston v. Hill*." Dkt. 34, at 3-4. Plaintiff asserts that the right to sue for retaliation after confronting police officers has been established, and that Transit employees who engage in police actions are "clearly not entitled to qualified immunity." Dkt. 34, at 4.

Defendants, in their reply in support of their motion for summary judgment, argue against Plaintiff's expansive reading of *Houston v. Hill*. Defendants assert, "[t]he *Houston* Court clearly established only that an ordinance making it unlawful to interrupt a police officer in the performance of his duties is unconstitutional." Dkt. 38, at 10. Defendants also contend that Plaintiff cannot cite to any case law suggesting that a passenger can direct fighting words, obscene language or true threats toward a bus driver or other passengers without risking temporary exclusion from the bus. Defendants further argue that a reasonable bus operator in Ms. Drake's position would have undoubtedly believed that her actions were lawful. Dkt. 38, at 10.

Finally, in their motion for reconsideration, Defendants argue that Ms. Drake perceived events that, while different than those reported by Plaintiff, served as the basis for her demand that Plaintiff exit the bus. Defendants contend that from Ms. Drake's perception of events, she believed that Plaintiff violated the rules of conduct and presented a potential risk of harm to other passengers. Defendants summarize their argument as follows: "Unless it can be said that no reasonable bus driver in her position, knowing what she knew and seeing what she saw, would have excluded plaintiff or written a corresponding incident report, her acts fall within the scope of qualified immunity." Dkt. 40, at 6-7. Finally, Defendants reiterate their argument that because Plaintiff's First Amendment rights at issue here are subject to a balancing test, these rights should not be considered "clearly established" for purposes of denying Ms. Drake qualified immunity. Dkt. 40, at 7.

Qualified immunity applies to government officials who are sued in their individual capacities when there is an absence of evidence of incompetence or knowing violation of the law.

*See Anderson*, 483 U.S. at 638 (1987). Ms. Drake, as a bus driver for Kitsap Transit, is a public employee who qualifies as a "government official."

The first step in the qualified immunity analysis, as explained in *Saucier*, is determining whether there has been a violation of the Plaintiff's constitutional rights. At this stage in the analysis, the facts are construed in a light most favorable to the Plaintiff. The Court, in its order granting in part and denying in part Defendants' motion for summary judgment, concluded that Plaintiff has stated a prima facie case of violation of his First Amendment rights under 42 U.S.C. § 1983. Dkt. 39, at 12-13.

The next step in the qualified immunity analysis is determining whether the right is so clearly established that a reasonable officer would be on notice of its existence and parameters. At this step, the burden rests with the Plaintiff. Here, Plaintiff appears to argue that *Houston v. Hill* establishes Plaintiff's constitutional right so clearly that a reasonable officer would be on notice of its existence and parameters. Plaintiff's argument is unpersuasive.

*Houston v. Hill* concerns police officers, not bus drivers. The *Houston* Court held that an ordinance making it unlawful to interrupt a police officer in the performance of his duties was overbroad and therefore invalid on its face under the First Amendment. Plaintiff's awkward attempt to equate bus drivers to police officers by arguing that, "[a]s employees with power to police behavior, Ms. Drake and Mr. Radke [sic] should have been aware of *Houston v. Hill* as established law," is unconvincing. *Houston v. Hill* is silent on the constitutional issues involved in this case. *Houston* says nothing about the power of bus drivers to eject passengers or write incident reports, nor does *Houston* discuss the contours of passengers' First Amendment rights. Plaintiff's expansive reading of *Houston* fails to satisfy the burden of showing that the right at issue here is so clearly established that a reasonable officer would be on notice of its existence and parameters.

Additionally, rights that are subject to a balancing test can rarely be considered "clearly established." Courts have suggested that,

> if the existence of a right or the degree of protection it warrants in a particular context is subject to a balancing test, the right can rarely be considered 'clearly

established' at least in the absence of closely corresponding factual and legal precedent.

*Baker v. Racansky*, 887 F.2d 183 (9th Cir. 1989), quoting *Myers v. Morris*, 810 F.2d 1437 (8th Cir. 1987). The right at issue in the present case, the First Amendment, is subject to various balancing tests. Here, Plaintiff has failed to refute that the First Amendment is not subject to a balancing test, and has failed to offer closely corresponding factual and legal precedent sufficient to show that the right at issue was "clearly established."

Plaintiff has failed to meet his burden of establishing that the right at issue was so clearly established that a reasonable officer would be on notice of its existence and parameters. Accordingly, Ms. Drake is entitled to qualified immunity from Plaintiff's First Amendment claim under 42 U.S.C. § 1983, and this claim against her should be dismissed.

**2) Qualified Immunity of Mr. Rathke**

Additionally, Defendants maintain that Mr. Rathke is entitled to qualified immunity because a reasonable person in his position would not know that he was violating Plaintiff's constitutional right to voice criticisms of public employees and to petition Kitsap Transit for redress of grievances.

Plaintiff, in his response to Defendants' motion for summary judgment, asserted that Mr. Rathke, "as [an] employee with power to police behavior," should have been aware of *Houston v. Hill* as established law. Dkt. 34, at 3. Plaintiff also maintains that the evidence before the Court shows that Mr. Rathke acted with retaliation and revenge for the challenge directed at him by the Plaintiff.

Defendants, in their reply in support of their summary judgment motion, argue that a reasonable transit supervisor in Mr. Rathke's position would undoubtedly have believed that reporting Plaintiff's "threatening and intimidating" behavior was lawful. Dkt. 38, at 10. In their motion for reconsideration, Defendants contend that Mr. Rathke merely (1) notified the Plaintiff of Mr. Harrington's decision to temporarily exclude Plaintiff from Kitsap Transit vehicles and property, and (2) reported Plaintiff's conduct after believing Plaintiff was unlawfully boarding the Kitsap Transit ferry and unlawfully harassing Mr. Rathke.

ORDER - 12

For purposes of the qualified immunity analysis, Defendants do not challenge the assumptions that Mr. Rathke is a "government official," and that Plaintiff has stated a prima facie case for a First Amendment violation. Dkt. 40, at 7. However, Defendants deny that a reasonable actor in Mr. Rathke's position would know that his conduct was unconstitutional.

As explained above, the Plaintiff bears the burden of showing that the right in question is so clearly established that a reasonable officer would be on notice of its existence and parameters. Plaintiff has failed to meet this burden. Plaintiff has provided no authority for the proposition that notifying an individual of his exclusion from transit vehicles and property constitutes a First Amendment violation. Nor has Plaintiff provided authority establishing that a First Amendment violation occurs when a transit supervisor reports behavior the supervisor characterizes as harassing.

As explained above, *Houston v. Hill* is factually dissimilar from the present case, and is insufficient to clearly establish the right at issue in such a way that a reasonable officer would be on notice of its existence and parameters. As also explained above, the First Amendment right at issue is subject to a balancing test. Plaintiff has failed to meet his burden of showing that the right at issue was clearly established. Therefore, Mr. Rathke is entitled to qualified immunity, and Plaintiff's First Amendment claim under 42 U.S.C. § 1983 against him should be dismissed.

**B. Plaintiff's First Amendment Claim Against Kitsap Transit**

Defendants, in their motion for reconsideration, also argue that the Plaintiff cannot meet the prima facie elements of a First Amendment claim against Kitsap Transit. Defendants maintain that Plaintiff must demonstrate that Kitsap Transit promulgated unconstitutional customs or policies that resulted in Ms. Drake's or Mr. Rathke's actions in order to be held liable. Defendants contend that Plaintiff has failed to assert that the Kitsap Transit Passenger Code of Conduct is unconstitutional, and has failed to assert that any other Kitsap Transit policy or custom is unconstitutional. Defendants raise this argument for the first time in their motion for reconsideration.

Local Rule CR 7(h)(1) explains that courts will ordinarily deny motions for reconsideration in the absence of a showing of new facts or legal authority which could not have been brought to the court's attention with reasonable diligence. Although Defendants have not previously provided legal authority for the unconstitutional custom or policy argument now before the Court, Defendants have denied that Kitsap Transit has violated Plaintiff's First Amendment rights from the outset of litigation. Defendants' unconstitutional custom or policy argument is a more specific iteration of Defendants' prior arguments, and is appropriate for consideration at this time.

As previously noted, Plaintiff failed to respond to Defendants' motion for reconsideration. Under Local Rule CR 7(b)(2), such failure to respond may be regarded as an admission by the Plaintiff that Defendants' motion has merit. Notwithstanding Plaintiff's failure to respond, the merits of the parties' arguments warrant consideration.

A municipality cannot be held liable under 42 U.S.C. § 1983 under the theory of *respondeat superior* for an injury inflicted solely by its employees or agents. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). Rather, a municipality can only be liable when execution of the municipality's policy or custom inflicts the injury. *Id*. The burden or proving that a municipality's policy or custom caused a deprivation of constitutional rights rests with the plaintiff. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 828 (1985).

Here, Plaintiff argues that actions of Kitsap Transit and its employees were "taken in retaliation for [his] complaints about the policies and practices of Kitsap Transit." Dkt. 35, at 3. Plaintiff further argues that, "[t]ypically, when [he] would complain, the drivers will retaliate by trying to provoke incidents so they can have a pretext to kick [him] off [the bus]." Dkt. 35, at 4.

Plaintiff's allegations are insufficient to establish that Kitsap Transit promulgated unconstitutional customs or policies that resulted in Kitsap Transit employees violating Plaintiff's First Amendment rights. To prevail on a § 1983 claim premised on an unconstitutional custom or policy, a plaintiff must prove "the existence of a widespread practice that . . . is so permanent and well settled to as to constitute a 'custom or usage' with the force of law." *Gillette v. Delmore*,

979 F.2d 1342, 1348-49 (9th Cir. 1992) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). The existence of a custom or informal policy may be proven with evidence of repeated constitutional violations for which errant municipal officials were not discharged or reprimanded. *Gillette*, 979 F.2d at 1349.

Here, even assuming that certain Kitsap Transit employees took retaliatory actions against Plaintiff, there is no evidence showing that such actions were the result of anything other than the individual employees' hostile feelings toward the Plaintiff. However, as the *Gillette* Court noted, "the unconstitutional discretionary actions of municipal employees generally are not chargeable to the municipality under section 1983." *Id*. at 1347.

In *Praprotnik*, the United States Supreme Court, in support of its reversal and remand of a city employee's unconstitutional policy claim against the City of St. Louis, reasoned, "[r]espondent does not contend that anyone in city government ever promulgated, or even articulated [an unconstitutional] policy. Nor did he attempt to prove that such retaliation was ever directed at anyone other than himself." *Praprotnik*, 485 U.S. at 128. The *Praprotnik* Court, in rejecting the respondent's unconstitutional policy claim also emphasized, "[t]he Mayor and Aldermen enacted no ordinance designed to retaliate against respondent or against similarly situated [individuals]." *Id*.

Similarly, in the present case, Plaintiff does not contend that anyone at Kitsap Transit promulgated or articulated an official policy or custom of retaliation against passengers who make complaints about the policies and practices of Kitsap Transit. Nor does Plaintiff attempt to prove that such retaliation was ever directed at any Kitsap Transit passengers other than himself. Here, Plaintiff merely alleges that Kitsap Transit drivers retaliated against him for his complaints; he does not allege that any high-level Kitsap Transit officials enacted an ordinance or established a custom of retaliating against him or against similarly situated passengers.

Plaintiff has failed to show that Kitsap Transit promulgated policies or customs that resulted in a violation of Plaintiff's First Amendment rights. Accordingly, Plaintiff's First Amendment claim against Kitsap Transit should be dismissed.

ORDER - 15

## C. Supplemental Jurisdiction Over Counterclaims

Defendants have asserted a counterclaim against Plaintiff for malicious prosecution under RCW 4.24.250. Defendants also seek declaratory and injunctive relief, requesting an order "declaring Plaintiff to be a public nuisance" and permanently enjoining him from Kitsap Transit facilities and buses. Defendants recognize that the Court has discretion to exercise supplemental jurisdiction over these state law claims. Dkt. 12, at 5-6.

By this order, all of Plaintiff's federal claims are dismissed. Under 28 U.S.C. § 1367, a federal court may assume supplemental jurisdiction over all other claims that are so related to claims in the action within the original jurisdiction so that they form part of the same case or controversy. The Court may decline to exercise this supplemental jurisdiction if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

Defendants' counterclaims do not appear to raise novel or complex issues of state law, nor do they appear to substantially predominate over the claims over which the Court has original jurisdiction. The Court, by this order, has dismissed all claims over which it has original jurisdiction, and there do not appear to be any exceptional circumstances. The parties should be directed to show cause why the Court should not decline to exercise supplemental jurisdiction over these state law claims and dismiss those claims without prejudice.

Defendants, in their Answer and Counterclaims, also contend that they are entitled to judgment against Plaintiff for reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988(b). Dkt. 12. However, a request for attorneys' fees under 42 U.S.C. § 1988(b) is not a counterclaim. If Defendants wish to pursue their attorneys' fees under § 1988(b), they may do so by motion.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendants' Motion for Reconsideration (Dkt. 40) is **GRANTED**. Plaintiff's First Amendment Claims under 42 U.S.C. § 1983 for the Denial of the Constitutional Right to Free Speech against Defendants Alice Drake, Bill Rathke, and Kitsap Transit are **DISMISSED**.

By this order, all remaining federal claims are dismissed. Therefore, not later than December 15, 2008, the parties are **ORDERED TO SHOW CAUSE**, if and any they may have, why the Court should not decline to exercise supplemental jurisdiction over the remaining state law claims pursuant to 18 U.S.C. § 1367(c)(3). Not later than December 19, 2008, any party may file a reply to a response. The matter is noted for consideration on the Court's December 19, 2008 calendar. The parties are notified that, if they fail to timely respond to this Order to Show Cause, or if they fail to otherwise show cause as directed herein, the Court will dismiss the state law claims without prejudice.

DATED this 25th day of November, 2008.

   /s/ Robert J. Bryan

ROBERT J. BRYAN
United States District Judge